**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>PETER J. GOGUEN<br><br>Debtor. | ) ) ) ) ) ) ) ) | Chapter 7<br>Case No. 09-42550 -MSH |
| DAVID M. SHARFARZ,<br><br>Plaintiff<br><br>v.<br><br>PETER J. GOGUEN,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Pro. No. 09-4158 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this adversary proceeding, plaintiff, David Sharfarz, seeks to have a state court judgment in the amount of $283,855.30 which he obtained against defendant, Peter Goguen, the debtor in the main case, determined to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (6). Bankruptcy Code § 523(a)(2) provides that a debt is not discharged in bankruptcy if it was based on money or services obtained by, among other things, false pretenses or a false representation. Section 523(a)(6) excepts from discharge any debt for willful and malicious injury to a person or property.

The parties submitted a joint pretrial memorandum stipulating to certain facts. At trial the parties introduced documentary evidence and Mr. Sharfarz and Mr. Goguen each testified. Based

on the stipulated facts, documents and testimony, I make findings of fact pursuant to Fed. R. Bankr. P. 7052 and reach conclusions of law as follows:

The underlying dispute arises from a September 15, 2006 construction contract between the parties, in which Mr. Goguen agreed to build an addition to Mr. Sharfarz's home in Acton, Massachusetts. At the time of the contract, Mr. Sharfarz made it clear to Mr. Goguen that it was critical to him that the project be started promptly so that the foundation and exterior walls would be completed before winter thereby enabling Mr. Goguen and his crew to work inside during the cold winter months in order to complete the project by the spring of 2007. The contract contained a seven phase construction and progress payment timetable by which Mr. Goguen agreed to a completion date of March 15, 2007. The project was not completed on time. In fact, it was not completed at all by Mr. Goguen who abandoned the job in late November or early December of 2007 because he had run out of money to fund the project even though Mr. Sharfarz had paid Mr. Goguen the entire contract price of $171,286. Mr. Sharfarz had to hire others to complete the project at an additional cost to him of $88,000.

On September 15, 2006, when the construction contract was signed, Mr. Sharfarz paid Mr. Goguen the first agreed-upon installment payment of $25,693. Less than two weeks later, on September 27, Mr. Goguen e-mailed Mr. Sharfarz that he had applied to the town for the building permit to construct his addition and was in "wait mode." This was untrue. In fact, Mr. Goguen had visited the Acton building department on September 25, 2006 and was told that he could not apply for a building permit until he fulfilled certain prerequisites. It took Mr. Goguen until the last week of November, 2006 to complete all the necessary preliminaries at which point he submitted the application for a building permit to the town. The permit itself was issued shortly thereafter on December 11, 2006. During the 3 months from the execution of the

construction contract until the building permit was actually issued, Mr. Goguen misled Mr. Sharfarz into believing the permit application had been filed in late September and it was the town bureaucracy that was responsible for the delay. When Mr. Sharfarz asked Mr. Goguen if Mr. Sharfarz might make inquiries with the town authorities to see if he could accelerate the approval process, Mr. Goguen discouraged him by suggesting that this could backfire and actually create further delay because lower-level town personnel would resent Mr. Sharfarz's complaining to their superiors. Mr. Sharfarz was persuaded to make no inquiries.

Mr. Sharfarz made it clear to Mr. Goguen that the timing of construction was of critical importance to him. Had Mr. Goguen not lied to Mr. Sharfarz about the status of his building permit on September 27, 2006, Mr. Sharfarz would have canceled the construction contract and received all or most of his initial payment. It was precisely this fear that led Mr. Goguen to lie in the first place and then to perpetuate that lie over the ensuing three months until the permit was issued. Indeed, Mr. Goguen never confessed to Mr. Sharfarz the truth about the timing of the building permit process. Only after Mr. Goguen abandoned the project in late 2007 did Mr. Sharfarz begin his own investigation and discover the fact that Mr. Goguen had not actually applied for the permit unitl the end of November, 2006.

Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud...." In order to prove that a debt is nondischargeable under § 523(a)(2)(A), a creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance

3

was justifiable; and (6) the reliance upon the false statement caused damage. In re Kosinski, 424 B.R. 599, 615 (1st Cir.B.A.P. 2010). The facts in this case easily satisfy these elements. Mr. Goguen lied intentionally to Mr. Sharfarz about the status of the building permit and then compounded the lie with his "backfire" warning when Mr. Sharfarz's offer to make his own inquiries threatened to expose Mr. Goguen's deception. As the Supreme Court noted when it adopted justifiable reliance as the appropriate measure of reliance required by § 523(a)(2)(A), justifiable reliance does not require independent investigation of the facts if circumstances do not arouse suspicion. Field v. Mans, 516 U.S. 59, 73-75 and n.12, 116 S.Ct. 437, 446 and n.12 (1995). I find nothing in the facts of this case that would have required Mr. Sharfarz to investigate the status of the permit, especially in light of Mr. Goguen's advice that such inquiries would backfire.

Mr. Sharfarz suffered $88,000 in actual damages as a result of Mr. Goguen's breach of the construction contract, damages which Mr. Sharfarz incurred because Mr. Goguen lied to him in September 2006 in order to avoid Mr. Sharfarz's cancelling the contract. This $88,000 is the basis of the default judgment Mr. Sharfarz obtained against Mr. Goguen in the Massachusetts Superior Court. The Superior Court added punitive damages, interest and attorneys' fees to that amount resulting in a final award of $283,855 which was the amount listed by Mr. Goguen on Schedule F of his bankruptcy schedules. I conclude that $88,000 of the amount owed by Mr. Goguen to Mr. Sharfarz is nondischargeable under Bankruptcy Code § 523 (a)(2) as a debt based on false representations.

In order for an injury to be willful under Bankruptcy Code § 523(a)(6), a debtor must intend the consequences of his action, that is, he must intend the injury, not just the action itself. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). I find that Mr.

4

Sharfarz has not carried his burden of proving that Mr. Goguen's lies were made with the intent to cause injury to Mr. Sharfarz or his property.

Judgment shall enter for Mr. Sharfarz and against Mr. Goguen in the amount of $88,000 on count I of the complaint. Judgment shall enter for Mr. Goguen on count II of the complaint.

Dated: November 3, 2010

_____
Melvin S. Hoffman
United States Bankruptcy Judge

5